28 C.C.P.A.(Patents)

### In re AUWARTER (Case 3).
### Patent Appeal No. 4478.

Court of Customs and Patent Appeals.
June 9, 1941.

Robert H. Wendt, of Chicago, Ill., and James H. Littlehales, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting, in view of the cited prior art, claims 12, 13 and 14 of an application for a patent for certain new and useful improvements in the production of metallic surface layers. Four claims were allowed:

Claim 14 is illustrative and reads as follows: "14. A method of producing metallic layers upon non-metallic supports, which comprises continuously and solely heating a work piece of one substantially pure metal in a high vacuum to a temperature below the melting point of said work piece, to effect a sublimation of pure metal only of said work piece for a predetermined period of time, and condensing the sublimed metal in a substantially uniform layer, of predetermined thickness depending on the time period, on a non-metallic support to be coated with a layer in said vacuum."

The cited prior art is: Williams, 2,079,-784, May 11, 1937; Edwards, 2,067,907, January 19, 1937; Fink et al., 1,738,991, December 10, 1929; Gardner et al., "The Making of Mirrors by the Deposition of Metal on Glass" January 6, 1931, Circular of the Bureau of Standards, No. 389, p. 10, paragraph c; page 17, lines 11 and 12.

The Gardner reference will not be considered here as it was cited as anticipating method claim 13, the appeal as to which will be dismissed upon motion which was made by appellant when the appeal was submitted here.

Appellant's invention relates to the production of metallic surface layers upon non-metallic objects, for example mirrors and optical measuring instruments. In carrying out the process a broad strip or band of pure metal, such as rhodium, is clamped between water-cooled copper jaws in a high vacuum container with the clean article to be coated placed directly opposite the metal band. The copper jaws are electrodes through which an electric current passes. By reason of the passing of the current therethrough the metal band is heated to a point where the metal sublimes, that is, where it turns directly into a gas from the solid without melting the solid. The temperature used is below that of the melting point of the metal. The gaseous particles pass in a uniform stream to the article to be coated and because of the area of the band of metal, which is commensurate with the area of said article, the particles tend to coat the article uniformly. The sublimation is carried on for a predetermined period of time upon the duration of which depends the character of the layer of metal. If the period of time be short the deposited layer is partially permeable, that is, it will transmit a certain amount of light and reflect a certain portion thereof. If the duration of the sublimation be longer, the layer of metal will form a mirror through which light transmission is slight.

The Fink et al. patent relates to the manufacture of vacuum vessels comprising two containers spaced by an annular vacuum chamber, such as the well known

vacuum bottles. In order to coat the walls of the containers within the annular chamber, the surface of the inner container is surrounded in cage-like fashion by a coil of volatile metal, such as magnesium. Surrounding the other vessel is a high frequency coil which induces secondary currents in the closed wire in the vacuum chamber and the heat generated by these induced currents volatilizes the metal of the volatile wire "causing the same to be deposited on the surrounding walls as a uniform mirror like coating."

The Edwards patent has for its primary object the production of a mirror surface. In carrying out the process of his invention the patentee provides for placing in a high vacuum chamber, near the top thereof, a sheet of glass to be coated. In the lower part of the chamber there is a piece of volatile metal coating material (an alloy of aluminum and magnesium) surrounded by a tungsten coil through which is passed an electric current causing the coating metal to sublime, which sublimation results in coating the exposed surface of the glass thus making a mirror. The surface of the mirror body is cleaned by means of an electrical discharge between a positive electrode immediately above and adjacent to said body and a negative electrode directly below in the lower portion of the vacuum chamber.

The Williams patent relates to apparatus particularly adapted for depositing coatings of metals or other solids upon a surface by thermal evaporation in a vacuum. The apparatus comprises a vacuum enclosure, means within the enclosure for supporting the object to be coated, together with heating coils composed of filaments plated with the solid to be vaporized. A heating of the coils causes sublimation of the solid so that the object to be coated, a sheet of glass, is made into a mirror. The patentee further states that his invention "includes the concept of positioning pieces of metals or other evaporatable solids within or upon a filament coil or coils."

The examiner held that claim 14 defines nothing patentable over any one of the references and that claim 12 is met by the Williams and the Fink et al. patents in that the latter claim, which depends upon claim 14, calls for a metal selected from a group of metals consisting of metals of the seventh and eighth group of the periodic system. The examiner stated

"The use of rhodium, platinum, palladium, nickel, etc. is shown in Williams and nickel and cobalt are shown in Fink et al., so that claim 12 is met by these patents."

The board, in its decision, gave the following reasons for affirming the decision of the examiner:

"The main distinction in the claims over Williams is that applicant heats a work piece of pure metal whereas the work piece of Williams is a plated tungsten filament. Edwards uses a tungsten filament to heat an alloy strip and Edwards may have several metals in the vacuum chamber. The Fink et al. patent discloses the use of pure metals in the process.

"Applicant holds his pure metals in copper jaws but we cannot see in what respect he has produced any unobvious result over the prior art in the use of pure metal. The apparatus may be different as to the means to hold the work piece whereby the pure metal of the work piece alone is vaporized, but no apparatus is disclosed nor are the claims directed to anything novel over the prior art except the use of a pure metal in an old process. As thus broadly stated, we believe it obvious to use a pure metal especially in view of Fink et al. In fact, the plating on the tungsten filaments of Williams may be pure metal."

Appellant asserts, in his brief, that "the invention does not consist in the use of pure metal, but in the provision of a new process which produces a new product in such manner as to avoid contamination, particularly by tungsten." Appellant contends that "contamination has been found to be caused by the tungsten filaments, crucibles or carriers which were used in the prior art devices for holding the work piece." He also contends that "While it is true that the melting point of tungsten is relatively high, tungsten also sublimes when it is subject to the temperatures used in the appellant's method, in the vacuum described."

Claim 14 does not define any specific temperature and so far as the high vacuum of appellant's process is concerned it is stated in the applications of both Williams and Edwards that the pressures in their vacuum chambers are reduced to 00001 mm. of mercury, which is the highest degree of vacuum mentioned by appellant. Therefore both of these references clearly anticipate the requirement of claim 14 as to degree of vacuum.

Appellant concedes that the production of metallic layers upon non-metallic objects in a vacuum by the application of heat to the work piece is old in the art.

It appears to us that the expression in claim 14 "solely heating the work piece" does not mean that the metal to be sublimed is the only metal which is heated. The work piece of the application is clamped in position by copper jaws which are electrodes and which, according to the specification of appellant, are water-cooled. There can be no purpose in water-cooling these electrodes unless they, as well as the work piece, become heated by appellant's process. Appellant's purpose is to heat the work piece only to the sublimation point. This undoubtedly is accomplished in his process, but nevertheless the copper jaws are also necessarily heated, but not to the point where vaporization occurs. The same condition exists in the heating process disclosed in the Edwards and the Williams patents.

The processes of the Edwards and Williams patents show heating elements made of tungsten. The Williams patent states that the metal of the work piece "has a boiling point below the melting point of the material constituting the filaments." The sublimation point in metals apparently is lower than the melting point, so that if the metal of the work piece has a boiling or melting point lower than that of the heating element or carrier (tungsten in the patents) the vaporization temperature of the coating metal must be reached before that of the carrier. Therefore we are unable to agree with appellant that there is a contamination of the coating caused by some sublimation of the tungsten. Furthermore if the heating shown in the Edwards and Williams patents were conducted at a temperature above "the melting point of said work piece" the metal of the work piece would drop to the bottom of the vacuum chamber where it would no longer be heated and it would therefore be useless.

Sublimation of the coating metal is clearly disclosed in the Edwards and the Williams patents. That it is controlled for predetermined times seems clear, depending upon the thickness of the layer of coating material desired. The control of the subliming process apparently presents no difficulty because, as appellant states in his brief, "The operation of sublimation is an easily controlled, accurate, and uniform method by means of which mirrors of any desired percentage [of] transmissive or reflective power may be manufactured."

Appellant argued that the clause in claim 14 reading "condensing the sublimed metal in a substantially uniform layer, of predetermined thickness depending on the time period" distinguishes the claim from the disclosure of the Fink et al. reference. Assuming, without deciding, that the contention is sound it seems logical that the thickness of the condensed uniform layer of coating metal produced in the processes disclosed by both the Edwards and the Williams patents would depend upon the length of time that the object to be coated would be exposed to the action of the sublimed metal.

For the reasons hereinbefore set out we are of the opinion that claim 14 was properly rejected.

Claim 12 contains the additional limitation that "the metal of the work piece is selected from a group of metals consisting of metals of the seventh and eighth group of periodic system." We find nothing in the record to suggest that the use of any such selection of metal would involve invention in the process claimed rather than the use of some other metal. Furthermore, nickel, palladium, platinum or rhodium, we are informed in the brief of the solicitor, are all of the eighth group. Therefore we find no error in the decisions of the Patent Office tribunals in rejecting claim 12.

The appellant's motion to dismiss the appeal as to claim 13 is granted.

For the reason that appellant has conceded that the invention as defined by the appealed claims does not have for a necessary element the use of pure metal, it is not necessary to discuss further the Fink et al. patent.

The decision of the Board of Appeals is affirmed.

Affirmed.